UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JAMES ANTHONY JAMISON,<br>                  Plaintiff,<br><br>          -vs-<br><br>Kilolo Kijakazi,[1]<br>Acting Commissioner of Social Security,<br><br>                  Defendant. | Civil Action No.: 4:21-cv-00282-TER<br><br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.    Procedural History**

Plaintiff filed an application for SSI on July 6, 2018, alleging inability to work since December 15, 2017. His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in December 2019, at which time Plaintiff, appearing *pro se*, and a VE testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on April 2, 2020, finding that Plaintiff was not disabled within the meaning of the Act. (Tr.

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

10-19). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied in December 2020, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Plaintiff, now represented by an attorney, filed an action in this court in January 2021. (ECF No. 1).

**B.     Introductory Facts**

Plaintiff was born on December 21, 1971, and was forty-six years old at the application date. (Tr. 18). Plaintiff has past relevant work experience as a fast food worker and cook and driver/auto jockey. (Tr. 17). Plaintiff alleges disability initially due to learning disability, diabetes, mental health, and PTSD. (Tr. 110-111).

**C.     The ALJ's Decision**

In the decision of April 2, 2020, the ALJ made the following findings of fact and conclusions of law (Tr. 10-19):

1. The claimant has not engaged in substantial gainful activity since July 6, 2018, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: diabetes mellitus with peripheral neuropathy; obesity; posttraumatic stress disorder; and specific learning disability (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; no exposure to unprotected heights, moving mechanical parts, and extreme heat; can maintain concentration, persistence, and pace for 2-hour intervals; limited to performing simple, routine tasks with GED reasoning level of 1 or 2; limited to making simple workrelated decision; limited to occasional interaction with co-workers and supervisors, and no

        more than incidental contact with the general public.

5.     The claimant is capable of performing past relevant work as a fast food worker and cook, and a driver/auto jockey. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.     The claimant has not been under a disability, as defined in the Social Security Act, since July 6, 2018, the date the application was filed (20 CFR 416.920(f)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in finding an RFC of light, arguing specifically that Plaintiff could not perform six hours of standing and walking. (ECF No. 15 at 12). Plaintiff argues Plaintiff has a limited ability to persist at a regular and continuing basis. Plaintiff argues the ALJ failed to address the impact of obesity on the RFC and on diabetes and peripheral neuropathy. Plaintiff argues he meets Listing 12.05B, specifically arguing Plaintiff had marked limitations in three paragraph B areas. (ECF No. 15 at 16). Plaintiff argues the RFC as related to mental limitations is deficient because of failure to comply with SSR 85-15. (ECF No. 15 at 17). Plaintiff argues the ALJ erred in evaluating the consultant opinions. Plaintiff argues that all these alleged errors affected Step Five. Defendant argues the ALJ's analysis here was sufficient and was in accordance with the applicable law and that Plaintiff has failed to show that the ALJ's decision is not based on substantial evidence.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary.

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971);

*Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**RFC**

Plaintiff argues the ALJ erred in finding an RFC of light, arguing more specifically that Plaintiff could not perform six hours of standing and walking. (ECF No. 15 at 12). Plaintiff argues he has a limited ability to persist at a regular and continuing basis. Plaintiff argues the RFC as related to mental limitations is deficient because of failure to comply with SSR 85-15. (ECF No. 15 at 17).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c).

In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ found an RFC of: "perform light work as defined in 20 CFR 416.967(b) except he can occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; no exposure to unprotected heights, moving mechanical parts, and extreme heat; can maintain concentration, persistence, and pace for 2-hour intervals; limited to performing simple, routine tasks with GED reasoning level of 1 or 2; limited to making simple workrelated decision; limited to occasional interaction with co-workers and supervisors, and no more than incidental contact with the general public." (Tr. 14).

*Light*

Plaintiff refers the court to the definition of light work in SSR 83-10. Plaintiff points to

medical records of pain and burning in feet, diminished reflexes and sensation, and abnormal balancing. (ECF No. 15 at 12-13). Plaintiff testified he could not carry objects and walk due to pain and balance. Plaintiff testified he could not stand for more than thirty minutes.

In formulating the RFC, the ALJ considered Plaintiff's allegations. (Tr. 14-15). The ALJ then found the statements concerning the limiting effects of alleged symptoms were not entirely consistent with the evidence in the record for the reasons explained in the ALJ's decision. (Tr. 15). The ALJ indicated that Plaintiff's limited and conservative treatment history indicated a continued capacity for light unskilled work within the RFC determined. (Tr. 15). The ALJ then detailed physical treatment records:

> Physical treatment records indicate a history of diabetes mellitus, as noted on acute care for an upper respiratory infection in 2018 (Ex. 2F/9). At a subsequent evaluation, he reported pain in his left big toe, with a reported previous crush injury (Ex. 3F). Laboratory findings indicated an HgA1C of 14.7%, but he reported feeling better with a medication change (Ex. 3F/6). He underwent a consultative examination in April 2019, at which he reported inability to work due to diabetic neuropathy (Ex. 7F). He denied any hypoglycemic episodes, but indicated that he has numbness and burning in both feet up to a level just above his ankles, preventing any significant standing or walking. He reported treatment with Tegretol and Tramadol for his pain (Ex. 7F). On examination, he weighed 255 pounds at a height of 5'7". He displayed no distress and was able to ambulate normally about the room. He had diminished sensation to light touch and vibration over both feet, and was missing his left great toe, and had trouble with Rhomberg testing, indicating abnormal balance (Ex. 7F). He was diagnosed with diabetes mellitus with peripheral neuropathy. At a mental evaluation in February 2020, he reported improvement in his neuropathy with Elevil (Ex. 10F/40).

(Tr. 15). The ALJ weighed the physical consultative examiner's opinion, Dr. Carpenter and found it partially persuasive. (Tr. 16-17). The ALJ specifically noted that a limitation to sedentary work was not supported by the limited medical evidence of record, citing to 2018 records from Regional Medical Center for upper respiratory infection and labs (Ex. 2F), summer 2018 office notes from

Orangeburg Free Medical Clinic (Ex. 3F), and Dr. Carpenter's one-time exam (Ex.7F). (Tr. 17, 332-339, 343-350, 400-401). The ALJ weighed the non-examining consultants' opinions and found them partially persuasive where they found medium work and the ALJ found the opinions were not fully consistent with other exam notes that supported a limitation to light work, citing to the above record exhibits and to education records (Ex. 1F). (Tr. 17). The ALJ concluded finding the RFC– limiting Plaintiff to light work with postural and environmental limitations– was supported by Plaintiff's history of diabetic neuropathy and obesity. (Tr. 17).

As demonstrated above, the ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)).

*Mental*

Plaintiff argues the RFC as related to mental limitations is deficient because of failure to comply with SSR 85-15. (ECF No. 15 at 17). In formulating the RFC determination, the ALJ considered Plaintiff's allegations as to his mental functioning:

> In terms of his mental functioning, he testified that he was in special education during his school years. He testified that he suffers from PTSD since witnessing a murder, and that he now has difficulty being around other people. He denied conflict with other people, but stated that he finds it difficult to concentrate when other people are around. He reported that he avoids going out due to this issue. He testified that he is typically only able to maintain his concentration for 5 minutes, and has difficulty completing tasks. As an example, he reported that he is unable to finish vacuuming or wash dishes due to mental issues maintaining concentration and pace. He reported that he lost his last job, working at a Popeye's, due to inability to understand paperwork.

9

(Tr. 15). The ALJ considered Plaintiff's performance in the educable mentally handicapped range.

(Tr. 15). The ALJ discussed mental health records, citing specific exhibits and pages, and noting both abnormal and normal reports and findings:

> More recent mental health records indicate reported symptoms of nightmares 3-4 times per week, frustration, and anxiety related to violence witnessed in prison and the death of family members (Ex. 4F/5). He reported difficulty maintaining in crowds due to a feeling that something might happen. He reported that he was currently seeking employment (Ex. 4F/8). Mental status examination indicated calm, cooperative behavior, with appropriate affect, but irritable, anxious mood. His speech and thought processes were normal, and he displayed intact recent and remote memory, but mild impairment on attention and immediate recall and difficulty with simple multiplication (Ex. 4F/10). He was diagnosed with PTSD (Ex. 4F/13). At a follow up evaluation, he displayed tangential, circumstantial thought process, and was hard to follow, but at a subsequent visit he displayed a calmer mood and normal cognition (Ex. 4F/15, 17). At an evaluation in January 2019, he reported continued difficulty with panic attacks and irritability, but some improvement in his symptoms with practice in visiting crowded stores (Ex. 6F/7). Mental status examination was generally unremarkable (Ex. 6F/7). In April 2019, he reported improvement with a medication change, with improved sleep and less anxiety in public (Ex. 10F/34). In August 2019, he reported driving more and going out more, but with a regression after being arrested on an old warrant (Ex. 10F/36). At an exam in February 2020, he reported improving panic symptoms with medication and self-control exercises (Ex. 10F/40). A mental status examination was unremarkable (Ex. 10F/40).

(Tr. 15-16). The ALJ discussed and weighed a psychological consultative exam:

> The claimant underwent a consultative examination in October 2018, including a clinical interview and assessment with the Wechsler Adult Intelligence Scale-4th Edition and the Wide Range Achievement Test-Revision 5 (Ex. 5F). He reported feeling "stuck" following experiencing trauma, as well as reading deficits that had interfered with his employment as a cook in the past. He reported symptoms of nightmares, intrusive thoughts, and images of trauma. He reported sad mood, decreased interest in activities, irritability, concentration deficits, and difficulty completing tasks, but denied helplessness, hopelessness, or worthlessness. In the interview, he was alert, responsive, and cooperative, with normal speech and somewhat restricted affect. On testing, he displayed a Full Scale IQ of 70, with a word reading score in the deficient range, below his expected ability given his intellectual skills (Ex. 5F/3). He was diagnosed with PTSD and specific learning disorder.
> ...

> The opinion of James Wray, Ph.D., the consultative psychological examiner, is partially persuasive (Ex. 5F). Dr. Wray stated that the claimant is capable of completing self-care tasks and basic instrumental activities of daily living and driving. He stated the claimant would require extra support in the occupational setting to maintain adequate social functioning and that he has concentration deficits, but is able to learn simple tasks and work at an adequate pace with simple tasks and follow simple instructions (Ex. 5F). He noted that the claimant's symptoms were likely to result in inconsistent functioning in an occupational setting. The undersigned finds that this opinion is only partially supported by Dr. Wray's examination notes and is not supported by longitudinal evidence of the adaptation deficits indicated by Dr. Wray (Ex. 4F, 5F, 6F).

(Tr. 16). The ALJ noted the physical consultative examiner noted mental limitations based on reports of PTSD but the consultant was not a mental health specialist and the exam did not provide detailed psychological findings to support the opinion. (Tr. 17). The ALJ noted the non-examining opinions: "Drs. Werden and Telford-Tyler stated that the claimant is capable of simple tasks for at least two-hour periods of time, but would have difficulty with working in close proximity to others or with continuous interaction with the general public (Ex. 1A, 4A)." (Tr. 17). However, the ALJ gave further limitations of no more than incidental contact with the general public, finding the limitation was supported by Plaintiff's treatment records showing paranoia and difficulty being around crowds. The ALJ cited to Exhibit 10F. (Tr. 17). The ALJ concluded by finding Plaintiff's learning disability limited Plaintiff to simple, routine tasks with GED reasoning level of 1 or 2 and simple work-related decisions, and his PTSD limited him to occasional interaction with coworkers and supervisors and no more than incidental contact with the public. (Tr. 17).

Based on the foregoing, the ALJ properly considered the record and cited to substantial evidence to support the RFC found. Where there are two reasonable views of the evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The court cannot say that a reasonable mind would not

reach this RFC in view of the totality of the evidence.

*Additional Arguments regarding the RFC*

Plaintiff argues there is "ample evidence" that pain and PTSD cause a need for breaks during the work day, absences, and an inability to concentrate. Plaintiff does not provide citation to such evidence and only notes Plaintiff's testimony on this issue, where the ALJ here fully addressed the record. As to Plaintiff's arguments regarding working on a sustained basis, as discussed above as to the entirety of the RFC, the ALJ cited to substantial evidence that Plaintiff could complete the RFC as determined.

*Obesity*

Plaintiff argues the ALJ failed to follow SSR 02-01p, which has been rescinded. The applicable SSR is 19-2p. The ALJ found obesity as a severe impairment, cited to SSR 19-2p in the listing analysis, and in the RFC narrative, the ALJ noted that based on obesity Plaintiff was limited to light work with further postural and environmental limitations. Plaintiff speculates that Plaintiff's other impairments "would be" adversely affected by obesity.[4] (ECF No. 15 at 15-16). Plaintiff relies on state agency consultants recognizing that impairments impacted his RFC; however, those same state agency consultants noted that obesity was considered in formulating their opined less restrictive RFC of medium, where the ALJ found a light RFC. (Tr. 116-118). With the record as discussed above, there is no outcome determinative error here as to obesity. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994).

---

[4] Furthermore, the ALJ did specifically address the combination of diabetic neuropathy and obesity in limiting him to light work and postural and environmental limitations. (Tr. 17).

**Listing 12.05B**

Plaintiff argues he meets Listing 12.05B, specifically arguing Plaintiff had marked limitations in three paragraph B areas. (ECF No. 15 at 16).

The "Listings," found at 20 C.F.R. part 404, subpart P, appendix 1, "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.' " *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir. 1990) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3). When a claimant satisfies a listing by meeting all its specified medical criteria, he presumably qualifies for benefits. *See Bennett*, 917 F.2d at 160.

The impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 404.1526(a). If a claimant has a listed impairment, but: 1) does "not exhibit one or more of the findings specified in the particular listing, or" 2) exhibits "all of the findings, but one or more of the findings is not as severe as specified in the particular listing," the claimant's impairment is medically equivalent to the listing if the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1).

At step three, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168 (4th Cir.1986).

Listing 12.05B requires:

    B. Satisfied by 1, 2, and 3 (see 12.00H):

    1. Significantly subaverage general intellectual functioning evidenced by a or b:
        a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
        b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and
2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
        a. Understand, remember, or apply information (see 12.00E1); or
        b. Interact with others (see 12.00E2); or
        c. Concentrate, persist, or maintain pace (see 12.00E3); or
        d. Adapt or manage oneself (see 12.00E4); and
3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 Listing 12.05.

As to mental impairments, the ALJ only specifically discussed Listings 12.11 and 12.15, which included paragraph B criteria that is also in Listing 12.05B. Listing 12.05, Intellectual Disorder, requires significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. 20 C.F.R. part 404, subpt. P, app. 1 § 12.00B4. Listing 12.11 addresses borderline intellectual functioning and learning disorders. The ALJ found moderate limitations in each paragraph B criteria:

    In understanding, remembering or applying information, the claimant has a moderate limitation. Examination records indicate significant intellectual deficits, particularly in the claimant's reading ability, and he testified that he has struggled in past work with reading instructions (Ex. 5F). On the other hand, he has a history of working with his learning disability, which he has had since childhood, and is able to drive and manage his activities of daily living independently. These factors indicate moderate limitation in this area.

    In interacting with others, the claimant has a moderate limitation. The claimant

> testified that he has difficulty maintaining focus when he is around other people, due to constantly worrying about what they are thinking. His treatment records indicate significant symptoms related to PTSD when in a public setting (Ex. 10F). On the other hand, he denied difficulty getting along with others, and is able to manage his symptoms sufficiently to shop in stores and other incidental public activities (Ex. 10F). These factors indicate moderate limitation in this area.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant testified that he has difficulty with concentration and maintaining focus on tasks, with inability to complete even simple household tasks without taking a break for loss of focus. Treatment records, however, generally indicate normal concentration, and the claimant is capable of driving (Ex. 10F). These factors indicate moderate limitation in this area.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant testified that he has severe difficulty with nightmares and intrusive thoughts related to past trauma. His treatment has been conservative and his symptoms generally stable, however, and he is capable of simple activities of daily living. These factors indicate moderate limitation in this area.

(Tr. 13).

In the Listing analysis, the ALJ noted favorable and unfavorable facts in weighing and finding moderate limitations and not marked or extreme limitations. (Tr. 13). Plaintiff cites to similar facts. (ECF No. 15 at 16). Plaintiff has failed to meet his burden of proof as to per se disability via Listing 12.05B. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)(quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996)). Substantial evidence supports the Listing analysis.

**Opinions**

Plaintiff argues the ALJ erred in evaluating the consultant opinions. Plaintiff argues the ALJ's findings conflict with the non-examining state agency psychological consultant opinions.

For applications filed on or after March 27, 2017, such as this action, the regulatory

framework for considering and articulating the value of medical opinions has been changed. *See* 20 C.F.R. § 404.1520c, § 416.920c; *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (revisions to medical evidence rules dated Jan. 18, 2017, and effective for claims filed after Mar. 27, 2017). Importantly, the new regulations no longer require any special significance be given to opinions by a treating physician. *See* 20 C.F.R. § 404.1527 (noting that the treating physician rule only applies to claims filed before March 27, 2017),§ 416.920c. The ALJ is not required to defer to or give any specific weight to medical opinions. 20 C.F.R. § 404.1520c(a)§ 416.920c(a). Instead, the ALJ should consider and articulate in the decision how persuasive each medical opinion is based upon the factors of: (1) supportability; (2) consistency; (3) relationship with the claimant(length, frequency, purpose, extent, and examining); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(b), (c); § 416.920c(b),(c). Supportability and consistency are the most important of the factors for consideration, and the ALJ is required to explain how he considered the supportability and consistency factors in evaluating opinion evidence. 20 C.F.R. § 404.1520c(a), (b)(2), § 416.920c(a), (b)(2). An ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2). In evaluating the supportability of an opinion, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1), § 416.920c(c)(1). In evaluating the consistency of an opinion, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2).

As discussed above in finding the ALJ's mental RFC supported by citation to substantial evidence, the ALJ found the state agency non-examining consultant opinions to be only partially persuasive, specifically noting:

> Drs. Werden and Telford-Tyler stated that the claimant is capable of simple tasks for at least two-hour periods of time, but would have difficulty with working in close proximity to others or with continuous interaction with the general public (Ex. 1A, 4A). The undersigned finds that additional limitation to no more than incidental contact with the general public is supported by the claimant's treatment records, which indicate persistent paranoia and difficulty being around crowds of people (Ex. 10F).

(Tr. 17). The ALJ gave more restrictions than the consultants, benefitting Plaintiff. (Tr. 17). Plaintiff asserts the "moderate" findings within subcategories of the SSA forms should have been addressed in the RFC. (ECF No. 15 at 19). The detailed opinions resulting from the "moderate limitations" found in the subcategories were: Plaintiff was capable of performing simple tasks for at least two hour periods of time, would be expected to occasionally miss a day of work, expected to have difficulty working in close proximity or coordination with coworkers, best suited for a job that does not require continuous interaction with the general public, can attend work regularly, and can accept supervisory feedback. (Tr. 139). The ALJ explained the weight given to the non-examining opinions and supported the weight with citation to substantial evidence.

Plaintiff argues that all these alleged errors affected Step Five because the argued RFC limitations were not asked of the VE. Step Five findings are supported by substantial evidence as the ALJ supported his findings at prior steps and further hypotheticals were not required.

### III. CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the

Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

August 26, 2022  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge